UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LE'SEAN EDGE,<br>    Plaintiff, | Case No. 1:21-cv-532 |
| vs | McFarland, J.<br>Bowman, M.J. |
| RON ERDOS, *et al.*,<br>    Defendants. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

      Plaintiff has filed a prisoner civil rights complaint in this Court. (Doc. 3). On September 7, 2021, the Court issued a Report and Recommendation recommending that the complaint be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). (Doc. 4). On November 19, 2021, the Court issued a second Report and Recommendation to deny plaintiff's November 5, 2021 motion, which the Court construed as a motion for Preliminary Injunction/Temporary Restraining Order. (Doc. 9). Both Report and Recommendations remain pending.

      In the meantime, plaintiff filed two motions for leave to amend his complaint (Doc. 7, 8), a motion for permission (Doc. 11), a motion to strike (Doc. 12), and a motion for supplemental complaint (Doc. 13). By separate Order, plaintiff's motion to strike—which sought to withdraw his two motions for leave to file an amended complaint—has been granted (Doc. 12) and his motion for permission (Doc. 11) denied as moot. The November 17, 2021 and November 18, 2021 motions to amend (Doc. 7, 8) were withdrawn from further consideration of the Court and terminated on the Court's docket. Finally, plaintiff's February 22, 2022 motion to amend was granted. (Doc. 13). Although plaintiff titles the amended complaint as a supplemental complaint, the complaint appears to be a complete statement of facts and claims, which the Court

understands to supersede the original complaint for all purposes.[1] *See In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013); *see also Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009).

This matter is now before the Court for a *sua sponte* review of the complaint, as amended, to determine whether the complaint or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—

---

[1] The original complaint, which detailed the same factual allegations as the amended complaint, was brought against defendants Ron Erdos, Larry Greene, Linnea Mahlman, Investigator Miller, Lt. Barney, C.O. Josh Kinner, and Mr. Oppy only in their official capacities. (*See* Doc. 3 at PageID 27). As detailed below and consistent with the September 7, 2021 Report and Recommendation, plaintiff's official capacity claims against all defendants are subject to dismissal. Furthermore, for the reasons stated below, plaintiff has failed to state claims for relief against defendants Greene, Mahlman, Miller, and Oppy to the extent that he intended to name them as defendants in the amended complaint.

[2] Formerly 28 U.S.C. § 1915(d).

>    (i) is frivolous or malicious;
>
>    (ii) fails to state a claim on which relief may be granted; or
>
>    (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on

its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

In the amended complaint, plaintiff alleges that on February 13, 2021, he witnessed several correctional officers assault another inmate. (Doc. 13 at PageID 74). During the course of the attack, plaintiff claims that he further witnessed one of the officers punch another officer in an attempt to make it look as though the inmate had assaulted the officer. (*Id.* at PageID 74–75). According to plaintiff, he inquired why the guards attacked the inmate—who plaintiff claims was dragged away, bloody and unconscious—and was told that the attack occurred because the inmate was a child molester. (*Id.* at PageID 75).

On February 14, 2021, the day after the incident, plaintiff claims he was escorted from his cell into the restrictive housing unit. Plaintiff indicates that he was not provided with any explanation for the move, aside from "because the captain said so." (*Id.*).

Plaintiff claims he received a conduct report three days later. The report, written by

4

defendant officer Josh Kinner, charged plaintiff with the infractions of threat, creating a disturbance, and disobeying a direct order in connection with the February 13, 2021 incident. Plaintiff claims that the report indicated that Kinner "overheard multiple inmates encouraging the inmate to continue assaulting the C.O." and that plaintiff said to other inmates that if they joined the altercation "we can show these bitches what these hands can do." (*Id.* at PageID 75–76). According to plaintiff, the report further alleged plaintiff initially refused Kinner's order to calm down, but did so once zone lieutenants arrived.

Plaintiff claims that the report is false and was issued in an effort to cover up/justify the misconduct of the correctional officers who attacked the other inmate. On this basis, plaintiff claims that he wrote a letter to ODRC Director Annette Chambers-Smith, explaining everything he witnessed on the day of the incident and that he was innocent of the conduct report. Plaintiff further alleges that he wrote an informal complaint to Institutional Director Ms. Mahlman, Investigator Mr. Miller, and Deputy Warden of Operations Ms. Davis. Plaintiff claims that in response, he was told the incident was under investigation. (*Id.* at PageID 76).

On March 1, 2021, plaintiff claims he was escorted to the Rules Infraction Board (RIB) hearing. Defendant Barney conducted the hearing, during which plaintiff questioned Kinney and requested that the security footage of the incident be reviewed. According to plaintiff, Barney refused to play the footage during the hearing, noting that he already viewed it and stating that it was too blurry to identify individuals. (*Id.* at PageID 76–77). Barney found plaintiff guilty as charged in the conduct report. As a result and with the approval of defendant Erdos, plaintiff claims his security level was raised from a 4AT to a 4B and remained in restrictive housing from February 13, 2021 to July 7, 2021. (*Id.* at PageID 77, 79).

Plaintiff claims that he was subsequently interviewed by Ohio State Patrolman Clingenpell regarding the February 13, 2021 incident. Plaintiff further alleges that in March of 2021, he was interviewed by Institutional Inspector Mr. Miller and asked if he would be willing to take a lie detector test regarding the attack. On April 15, 2021, plaintiff indicates that a lie detector test was administered by Investigator J.T. Hall. Plaintiff claims he was asked questions regarding the February 13, 2021 incident, including whether he witnessed the other inmate being attacked and whether he said the comments alleged in the resulting conduct report. According to plaintiff, Hall informed him that he has passed the test and that he had seen RIB convictions overturned on that basis. (*Id.* at PageID 78).

On May 3, 2021, plaintiff claims he was again interviewed concerning the incident by the Chief Inspector's Assistant, Kelly Riehle. Plaintiff claims he again detailed his observations during the incident and that Riehle acknowledged that plaintiff passed the lie detector test, however she gave no definitive answer as to whether his 4AT security status would be restored. (*Id.* at PageID 79). As noted above, plaintiff claims he remained in restrictive housing until July 7, 2021.

Based on the above facts, plaintiff alleges that defendants violated his due process rights in connection with the alleged false conduct report, RIB proceeding, and resulting sanction. He further alleges that defendants retaliated against him for filing grievances and informal complaints in violation of the First Amendment. (*Id.* at PageID 80–81). Plaintiff seeks monetary relief. (*Id.* at PageID 81).

At this stage in the proceedings, without the benefit of briefing by the parties to this action and construing plaintiff's pro se complaint liberally, the undersigned concludes that

6

plaintiff may proceed with his First Amendment retaliation claims against defendants Kinner, Barney, and Erdos in their individual capacities, based on his allegation that these defendants retaliated against him for witnessing and writing grievances concerning the February 13, 2021 attack. However, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

As an initial matter and consistent with the Court's September 7, 2021 Report and Recommendation, plaintiff's claims against defendants in their official capacities should be dismissed. As noted above, plaintiff seeks monetary relief in the amended complaint. However, absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is

deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

Plaintiff has also failed to state a due process claim in connection with the allegedly false conduct report issued against him and the subsequent RIB proceeding. Plaintiff claims that his due process rights were violated when Kinner issued the conduct report against him, Barney found him guilty of the offense and imposed a disciplinary sanction, and Erdos authorized his security level increase. (*See* Doc. 13 at PageID 80–81).

Plaintiff fails to state a viable constitutional claim under the Fourteenth Amendment in connection with the RIB hearing, because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th

8

Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

      Here, plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life.[3] Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against defendants in connection with their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

      Plaintiff has also not stated a due process claim to the extent he has alleged that Kinner wrote a false conduct report which resulted in the disciplinary sanctions imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he

---

[3] In the original complaint, since superseded, plaintiff alleged that the RIB proceeding and resulting sanction caused him to "lose out on good days." (Doc. 3 at PageID 31). However, even if these allegations were present in the amended complaint, plaintiff does not allege that the RIB proceeding resulted in the *withdrawal* of good-time credits.

9

had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Finally, as noted above (*see supra* n. 1), plaintiff also named defendants Cynthia Davis, Larry Greene, Linnea Mahlman, Investigator Miller, and Unit Manager Oppy in the original complaint. (*See* Doc. 3 at PageID 27). Plaintiff sought to hold these defendants liable—albeit in their official capacities—based on his allegation that he wrote informal grievances to them and they failed to investigate his claims or take corrective action. (*See* Doc. 3 at PageID 31). The amended complaint also includes factual allegations that plaintiff wrote informal complaints to Mahlman, Miller and Davis concerning the February 13, 2021 incident and conduct report, but he was told that the incident was under investigation. (Doc. 13 at PageID 76).

To the extent that plaintiff intended to name these defendants in the amended complaint, he fails to state a claim upon which relief may be granted. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations

10

omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff fails to state a claim upon which relief may be granted against defendants Davis, Greene, Mahlman, Miller, and Oppy to the extent he intended these individuals as defendants to the action in the amended complaint.

Accordingly, in sum, plaintiff may proceed in this action with his First Amendment retaliation claims against defendants Kinner, Barney, and Erdos. However, plaintiff has failed to provide summons and U.S. Marshal forms for service on these defendants. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for defendants Kinner, Barney, and Erdos. Once the Court receives the requested forms and service copies, the Court will order service of process by the United States Marshal.

### IT IS THEREFORE RECOMMENDED THAT:

The complaint, as amended, be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's First Amendment retaliation claims against defendants Kinner, Barney, and Erdos.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff, **within thirty (30) days** of the date of this Order, submit a

11

completed summons and U.S. Marshal form for service on defendants Kinner, Barney, and Erdos.

2. The Clerk of Court is **DIRECTED** send to plaintiff a summons and United States Marshal form for this purpose. Upon receipt of the completed summons and United States Marshal forms, the Court shall order service of process by the United States Marshal in this case.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

  s/Stephanie K. Bowman  
Stephanie K. Bowman  
United States Magistrate Judge

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LE'SEAN EDGE,
    Plaintiff,

vs

RON ERDOS, *et al.*,
    Defendants.

Case No. 1:21-cv-532

McFarland, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13