**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LE'SEAN EDGE,                                          Case No. 1:21-cv-532

      Plaintiff,

                                      Hopkins, J.

      v.                                          Bowman, M.J.

RON ERDOS, et al.,

      Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff, formerly incarcerated, filed this prisoner civil rights suit in August 2021 and amended his complaint on March 22, 2022.[1] Presently before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the undersigned concludes that genuine issue of material fact preclude summary judgment, and therefore recommends that the motions of both parties be DENIED.

    **I.**    **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party has the burden of showing a lack of evidence to support the

---

[1]Plaintiff states he was released from prison on August 22, 2023. (Doc. 56).

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. Where both parties have moved for summary judgment, the Rule 56 standard remains the same. Thus, in evaluating Plaintiff's pending motion, the Court will construe any factual disputes in favor of the Defendants. By contrast, in evaluating whether Defendants should prevail, the Court has drawn all reasonable inferences in Plaintiff's favor. See *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994) (explaining that a court must evaluate each motion for summary judgment on its own merits).

Because Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). That said, a litigant's pro se status does not alter his burden of production to support his own motion for summary judgment, nor does it alter his burden supporting his factual assertions with admissible evidence when faced with a defendant's summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

## II.     Findings of Fact[2]

The claims in Plaintiff's amended verified complaint[3] arise out of a use-of-force incident that occurred on February 13, 2021 between a number of correctional officers and another inmate, identified as Inmate Kitchen, at the Southern Ohio Correctional Facility in Lucasville, Ohio.[4] On that day, Plaintiff states that he witnessed correctional officers brutally beat Kitchen without provocation, purportedly because they believed Kitchen was a child molester. (Doc. 50, PageID 327, citing Doc. 13, PageID 74-75; *see also* Doc. 53, PageID 403). Inmate Kitchen was transferred to an outside hospital for medical care following the incident. For purposes of summary judgment, Defendants have submitted no evidence that contradicts Plaintiff's sworn account of the force he witnessed against Kitchen.[5]

Defendant Kinner was one of the officers at the scene, standing near a bleachers section in the gymnasium where Plaintiff was seated with other inmates. Plaintiff had a view into the recreation equipment room where the incident was occurring. During the incident, Plaintiff states he witnessed one officer punch another officer to try to make it look as though Inmate Kitchen had assaulted an officer, thereby justifying the beating. (Doc. 13, PageID 74-75). Soon after, Plaintiff and other inmates were directed to return

---

[2]The Findings of Fact primarily reflect undisputed facts, but note where appropriate any issues that remain in dispute.

[3]A verified complaint equals a declaration made under penalty of perjury as to any facts asserted based on personal knowledge that would be admissible in evidence, but not as to legal conclusions to be drawn from those facts. *Healthy Advice Networks, LLC v. Contextmedia, Inc.*, No. 1:12-cv-610-SJD, 2014 WL 5588444, at *4 (S.D. Ohio Nov. 3, 2014).

[4]Kitchen has filed a separate lawsuit against two SOCF correctional officers based on the use of force against him that day. *See Kitchen v. Lucasville Correctional Institution*, Case No. 1:22-cv-500-MWM-PBS.

[5]Plaintiff has submitted a copy of an institutional Use of Force Special Investigation Report dated September 15, 2021 that (mostly) concludes that the force against Kitchen was justified. (Doc. 51, Exh. C).

to their cells. Plaintiff orally announced his intent to write a grievance about the force he had witnessed on his way back to his cell. (Doc. 53, PageID 404).

Hours later, between 3 and 4 a.m. on February 14, 2021, Plaintiff was awoken and escorted into the restrictive housing unit. When he asked about the reason for the move and whether it had to do with the use-of-force incident, he was told only "because the captain said so." (Doc. 13, PageID 75). Three days later on February 17, Plaintiff was presented with a copy of a Conduct Report, written by Kinner, that charged Plaintiff with violations of Rule 08 (threatening bodily harm to another), Rule 18 (encouraging or creating a disturbance) and Rule 21 (disobedience of a direct order) for his alleged conduct on February 13, 2021. (Doc. 50-4, Greene Declaration ¶7, PageID 347). The Conduct Report states as follows:

> I C/O Kinner responded to a man down alarm/staff assault in the M1 Gym. Quickly after my arrival I became concerned for the safety of responding officers due to multiple inmates standing in the bleachers near the equipment room where staff was assaulted. These inmates were shouting obscenities towards responding officers and ignored my direct orders for them to be seated. They were encouraging the inmate who had assaulted staff to continue to harm officers "because that's what they deserve". They were also talking amongst each other about joining in on the assault, I overheard and identified inmate Edge 671-334 saying "yall step off the ledge I'm with you, show these bitches what these hands can do". Inmate Edge was referring to the concrete ledge of the bleachers and assaulting staff. His comments were echoed by multiple other inmates near him, eventually he stopped creating a disturbance when Zone Lieutenants arrived.

(Doc. 50-5, PageID 348). Plaintiff states that another witness, Inmate Storey, was charged with the same Conduct Report. (Doc. 53, PageID 404).

In response to the Conduct Report, Plaintiff wrote to the Director of the Ohio Department of Rehabilitation and Corrections, Annette Chambers-Smith, to report what he witnessed on February 13 and to proclaim his innocence of the allegedly false charges.

He submitted informal complaints to the Institutional Director, an institutional investigator and the Deputy Warden of Operations. (Doc. 13, PageID 76).

On March 1, 2021, Plaintiff appeared before the Rules Infraction Board ("RIB"), including Defendant Barney.[6] Plaintiff stated in his defense:

> THIS IS A PLOY TO TAKE THE LIGHT OFF OF WHAT THEY DID. WE CAME DOWN TO REC AND I WAS IN THE BLEACHERS. I SAW INMATE KITCHEN AND THEY PUSHED HIM INTO THE EQUIPMENT ROOM AND WE HEARD A WHOLE BUNCH OF RUMBLING, THE DUDE WAS SCREAMING THAT HE DIDN'T DO NOTHING. ONE C/O PUNCHED ANOTHER ONE IN THE FACE. PEOPLE WERE SAYING LITTLE SHIT BUT I DIDN'T SAY NOTHING. I WENT BACK TO THE BLOCK AND ABOUT 3:00 IN THE MORNING THEY CAME AND GOT ME

(Doc. 50-5, PageID 349).

At the RIB hearing, Plaintiff called Inmate Storey to corroborate his account. Plaintiff also questioned Kinner and requested that the security footage of the incident be reviewed. However, Defendant Barney refused to play the footage for Plaintiff, stating that he already viewed it and that it was too blurry to identify individuals. (Doc. 13, PageID 76-77; Doc. 53, PageID 398). Kinner testified that he could identify Plaintiff because he recognized Edge's voice among the shouting inmates. After hearing from all three witnesses, the RIB determined that Plaintiff's denial of the charges was "Not convincing." (Doc. 50-5, PageID 354). The RIB's findings mirror those related in Kinner's Conduct Report. (*Id.*)

After Plaintiff was found guilty, he spent 25 days in Restrictive Housing and was recommended for a security review. (S*ee* Doc. 50-5, PageID 354). Plaintiff's disciplinary conviction was affirmed and his security level was increased from 4AT to a 4B

---

[6]Records submitted by Defendants reflect that Barney served as Secretary of the RIB.

classification on March 2, 2021. (Doc. 50-5, PageID 355). Plaintiff remained in restrictive housing through July 7, 2021. (Doc. 13, PageID 77, 79).

Several times after the RIB hearing, Plaintiff was interviewed both by institutional employees and by state police concerning the February 13 incident. On April 14, 2021, Plaintiff submitted to a lie detector test administered by Institutional Investigator J.T. Hall. Plaintiff was asked questions about the incident, including whether he witnessed the other inmate being attacked and whether he said the comments alleged in the Conduct Report. Plaintiff reports he passed the test and that Hall told him he had seen RIB convictions overturned on that basis but "can't make any promises." (*Id.*, PageID 78). On May 3, 2021, Plaintiff was interviewed by the Chief Inspector's Assistant, Kelly Riehle. Plaintiff again reported his observations and Riehle acknowledged that Plaintiff had passed the lie detector test. However, she gave no definitive answer on whether his 4AT security status would be restored. (*Id.*, PageID 79).

### III.    Analysis

On initial review, this Court dismissed all claims except for Plaintiff's First Amendment retaliation claims against Kinner, Barney and Erdos in their individual capacities, based on Plaintiff's allegation that those three Defendants retaliated against him for witnessing and writing grievances about the February 13, 2021 attack. (Docs. 16, 37). Both parties have filed cross-motions for summary judgment on those remaining First Amendment claims.

## A.  Defendants' Motion for Summary Judgment

### 1.  Whether Plaintiff's Disciplinary Conviction Bars Suit

As stated above, Plaintiff was charged and convicted of three rules violations in connection with the February 13, 2021 incident. (Doc. 50-4, Greene Declaration ¶7, PageID 347). Plaintiff spent 25 days in Restrictive Housing and was recommended for a security review based on the disciplinary convictions. (*See* Doc. 50-5, PageID 354). Ultimately, Plaintiff's security status was increased from 4AT to 4B. He remained in restrictive housing between February 14 and July 7, 2021 — the amount of time he had to serve in that housing unit before his security level was reduced back to 4AT. (Doc. 13, PageID 79).

Defendants argue that Plaintiff's civil rights claims are barred by *Heck v. Humphrey*, 114 S.Ct. 2364, 523 U.S. 477 (1994) and its progeny. In *Heck*, the Supreme Court held that a § 1983 claim for damages is not cognizable if the civil claim "would necessarily imply the invalidity of [a] conviction or sentence," unless the plaintiff can "demonstrate that the conviction or sentence has already been invalidated." *Id*., 114 S.Ct. at 2372, 512 U.S. at 487. According to Defendants, *Heck* bars Plaintiff's First Amendment retaliation claims here.

But Defendants overstate *Heck*'s holding, which applies only in limited circumstances to findings of guilt in the context of prison disciplinary proceedings. In fact, the Supreme Court has held that *Heck* is not implicated by a suit that impacts a conviction in a prison disciplinary proceeding absent evidence of the impact on the length of a prisoner's sentence. *See Muhammad v. Close,* 540 U.S. 749, 754-55, 124 S.Ct. 1303 (2004) (holding that *Heck* does not apply categorically to prison disciplinary proceedings);

see also *Wilkinson v. Dotson,* 544 U.S. 74, 83, 125 S.Ct. 1242 (2005) (holding that term "sentence" as used in *Heck* refers to "substantive determinations as to the length of confinement."). In accord with that controlling case law, the Sixth Circuit has held that when a retaliation claim is based on a disciplinary conviction that does not affect the length of a prisoner's sentence, *Heck* is not implicated. *Meeks v. Schofield*, 625 Fed. Appx. 697, 701 (6th Cir. 2015); *see also Peterson v. Johnson,* 714 F.3d 905, 918 (6th Cir. 2013). Additionally, the Sixth Circuit rejects the premise that a finding of guilt at a prison misconduct hearing acts as an absolute bar to a First Amendment retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (rejecting the "checkmate doctrine").

Defendants, as the moving party, bear the burden of proof to show that Plaintiff's conviction in prison disciplinary proceedings lengthened his sentence in the manner that would implicate *Heck*. Notably, in the course of screening the amended complaint, the Court dismissed due process claims based on the allegedly false conduct report and subsequent RIB proceeding in part because Plaintiff did <u>not</u> allege that "the challenged disciplinary proceedings resulted in the lengthening of his prison sentence or the withdrawal of good-time credits."[7] (Doc. 16, PageID 104). Therefore, the Court concluded that the challenged discipline "did not amount to a deprivation of a constitutionally protected liberty interest." (Doc. 16, PageID 103). Defendants have submitted no contrary evidence on summary judgment that the disciplinary convictions lengthened Plaintiff's

---

[7]The amended complaint omitted an allegation included in the original complaint that the RIB proceeding caused him to "lose out on good days." The Court hypothesized that even if that allegation had been restated, *Heck* still would not apply unless Plaintiff alleged that the disciplinary conviction resulted in a withdrawal of credits. *But see Bell v. Wilkinson*, 145 Fed. Appx. 169, 170 (6th Cir. 2005) (applying *Heck* based on defense showing that RIB conviction impacted length of plaintiff's sentence due to inability to earn good time credits).

sentence. *Heck* therefore does not operate as a bar to Plaintiff's First Amendment retaliation claims.

### 2. Elements of a Retaliation Claim

In support of their motion for summary judgment, Defendants also argue that Plaintiff has not produced sufficient evidence to prove any of the elements of his claim. The Sixth Circuit has held that to succeed on a First Amendment retaliation claim, a plaintiff must prove three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d at 262 (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

### a. Protected Conduct

Defendants first argue that Plaintiff cannot show that charges against him from the February 13 incident, as reflected in the February 17, 2021 Conduct Report, were motivated by any "protected conduct." Defendants suggest that because Plaintiff alleges that Defendants retaliated against him for "filing grievances and for writing informal complaints" that Plaintiff must be referring to grievances or informal complaints that he submitted before February 13, 2021. Institutional records reflect that prior to the February 13 incident, Plaintiff had last filed a grievance or informal complaint resolution ("ICR") on January 19, 2021. Defendants argue that January 19, 2021 is a date too remote in time to constitute "protected conduct" over which Defendants may have been motivated to file a retaliatory Conduct Report.

9

But nothing in the amended complaint or in this Court's prior analysis supports Defendants' rather curious hypothesis that Plaintiff is alleging that Defendants' First Amendment violations were based on old grievances that Plaintiff filed in January 2021 or earlier. As the prior Report and Recommendation ("R&R") makes clear, this case is about Plaintiff's claim that all three Defendants "retaliated against him for witnessing and writing grievances concerning the February 13, 2021 attack." (Doc. 16, PageID 102). The undersigned therefore rejects Defendants' contention that Plaintiff's failure to identify specific grievances or complaints *before* February 13, 2021 means that he cannot show "protected conduct."

Plaintiff has filed a Declaration in support of his cross-motion for summary judgment that asserts that he was charged and convicted in retaliation "for witnessing … Kitchen …get brutally beaten by prison staff and then for writing informal complaints and grievances on that incident." (Doc. 53, PageID 388; *see also id*., PageID 400, alleging retaliation for witnessing the assault on Kitchen and reporting what he witnessed). Plaintiff's Declaration further attests that he wrote an informal complaint on February 13 directed to Institutional Inspector Mahlman. (Doc. 53, PageID 388).

Defendants argue that the record does not support Plaintiff's attestation because Plaintiff has not included a copy of the alleged February 13 complaint submitted to Inspector Mahlman. By contrast, the record contains a copy of an ICR dated as "submitted" by Plaintiff on February 14, signed as received by staff on February 17, and bearing an institutional stamp dated February 18, 2021. (Doc. 50-3). Defendants challenge the February 14 ICR on grounds that, on its face, it was not received until

February 17. They contend that means that Plaintiff did not engage in protected conduct or "put the institution on notice" until after he was written up. (Doc. 55, PageID 422).

But portions of Plaintiff's Declaration imply that the ICR dated February 14 was the second he submitted, after he submitted the first complaint to Mahlman on February 13. (Doc. 53, PageID 388, "The informal complaint I wrote on February 13, 2021 was issued to the Institutional Inspector Linnea Mahlman."). In any event, there is no dispute that the February 14 date of the ICR in the record corresponds with the date Plaintiff was placed in restrictive housing, prior to his receipt of the Conduct Report. The referenced ICR includes Plaintiff's account of the attack on Kitchen by various correctional officers, and corroborates Plaintiff's statement that immediately after the incident, Plaintiff "told the [correctional officers] that I was writing this up as soon as I got back to the block." (Doc. 50-3, PageID 345; Doc. 51, PageID 379). The ICR complains that before he could do so, "[n]ext thing I know I'm being investigated." (*Id*.) The ICR directly asserts that Plaintiff is "being retaliated on" based on his role as a witness to the attack, as well as based on other unspecified "pending lawsuits." (*Id*.).[8] And while Defendants maintain that the Conduct Report was written by Kinner on the same date of that ICR (February 14), they do not dispute that Plaintiff was not notified of any charges until he was served with the Conduct Report on February 17. (Doc. 50-5, PageID 348).

In short, the ICR dated February 14 provides evidence of "protected conduct" in the form of an oral complaint made to officers immediately after the attack on February 13, before Plaintiff was issued a Conduct Report. *See Maben v. Thelen*, 887 F.3d at 265

---

[8]Plaintiff's cross-motion for summary judgment adds a cursory argument that he "also believes he was being retaliated on for the pending lawsuit he had against Institutional Inspector Linnea Mahlman, C.O. Wellman, and C.O. Justice at the time." (*Id.*, PageID 400). The undersigned declines to consider this new retaliation claim, which was not previously identified among the limited claims that survived screening.

(holding that plaintiff's oral grievance constitutes protected activity under the First Amendment). Plaintiff has also submitted evidence that he filed ICRs or grievances on multiple dates close in time to the events at issue, including February 17, February 18, March 1, March 2, March 3, March 9, March 14, March 15, March 16, March 22, and March 24. (Doc. 51, PageID 378).

After Plaintiff continued to complain both orally and in writing about the incident involving Kitchen and of being "retaliated" against, he was convicted of all three disciplinary offenses and placed in disciplinary housing. The record reflects that Plaintiff made complaints prior to his March 1 conviction and the subsequent lowering of his security clearance. Plaintiff also has submitted a copy of his March 10, 2021 appeal to the Chief Inspector, in which he again relates having witnessed the February 13 incident and states that other inmates in the bleachers allegedly pleaded "stop [you're] going to kill him." (Doc. 53-1, PageID 412). Consistent with earlier grievances, the March 10 document repeats Plaintiff's concern that he was falsely charged with rule violations as "a ploy to try to justify their assault" on Kitchen. (*Id.*)

Reviewing the record as a whole, Defendants have failed to show that Plaintiff did not engage in protected conduct before the alleged retaliation. To the contrary, a reasonable jury could conclude that Plaintiff engaged in protected conduct through his verbal complaints immediately after the February 13 use-of-force incident (stating his intent to follow up with a written grievance) and through written statements made both before and after the issuance of the Conduct Report and conviction on those charges.

### b.  Adverse Action and Causal Connection

Even if this Court finds a genuine issue of material fact exists on the "protected conduct" element, Defendants alternatively argue that Plaintiff cannot prove either adverse action or a causal connection between the adverse action and his exercise of his First Amendment rights. Returning to the unfounded hypothesis that Plaintiff is alleging that the Conduct Report was in retaliation for some unspecified grievances written on or before January 19, 2021, Defendants argue that there is no temporal proximity that would support an inference of retaliatory motive. As discussed, however, this case is about protected conduct that occurred *on or after* February 13, 2021.

Plaintiff attests in his verified complaint and has submitted corroborative evidence that he orally complained about the excess use of force against Kitchen on February 13. Construed in Plaintiff's favor, the record reflects that Plaintiff was placed in disciplinary housing without being provided any substantive reasons for that action hours after his verbal complaints, on February 14. He wrote up a written complaint on the same date, but was kept in disciplinary housing without being provided with a copy of disciplinary charges until February 17. Plaintiff asserts that he and Inmate Storey (another inmate interviewed during the investigation of the use-of-force incident) were charged with the same offenses. No other inmates were charged despite Kinner's statements in the Conduct Report that multiple inmates were "shouting obscenities towards responding officers," "ignored…direct orders for them to be seated," and "were encouraging the inmate who had assaulted staff to continue to harm officers."[9]

---

[9]According to Plaintiff, he and Inmate Storey are black, but most other inmates sitting in the bleachers were white. (Doc. 53, PageID 406). In his cross-motion for summary judgment, Plaintiff argues he was "racially discriminated against …by defendant Kinner" in addition to being retaliated against. (Doc. 53, PageID 406).

The evidence suggests a sufficiently "adverse action" because Plaintiff was deprived of significant privileges as a result of being charged with and later convicted of the three rule violations. *See Maben v. Thelen*, 887 F.3d at 267. Similarly, the undersigned concludes that the record contains sufficient evidence for a reasonable jury to find that the adverse action of being charged with and convicted of the disciplinary offenses "was motivated at least in part by…protected conduct." *Id.*, 887 F.3d at 268. The close temporal proximity alone suggests retaliatory motive. *Id.* Thus, Defendants are not entitled to summary judgment on the "adverse action" or "causation" elements. *Accord Maben*, 887 F.3d at 268-269 (denying summary judgment where defendants merely disputed whether inmate was guilty of misconduct charge).

As an ancillary argument, Defendants point out that the complaint does not specifically allege "retaliation" by Defendant Kinner. It is true that Plaintiff does not use the word "retaliate" or "First Amendment" in his allegations against Kinner, as he does in allegations against Defendants Barney and Erdos. (*See* Doc. 13, PageID 80). But he does allege that Defendant Kinner was the individual who wrote up the false conduct report, motivated by an intent to use Plaintiff "as a scapegoat to try and cover or justify the misconduct…against inmate Michael Kitchen." (Doc. 13, PageID 76). Considering the record as a whole, including Plaintiff's assertion that he verbally complained about the incident immediately after it occurred in front of Kinner and other involved officers, the undersigned finds no reason to revisit the Court's prior conclusion that the complaint states a retaliation claim against Kinner based on Plaintiff "witnessing" and complaining about the excess use of force incident.

---

The undersigned declines to address this argument because no such claim is included in his amended complaint.

Last, the undersigned rejects Defendants' argument that they are entitled to summary judgment because the Conduct Report and RIB conviction reflect "a completely legitimate and penological purpose – keeping order while restraining another disruptive inmate." (Doc. 50, PageID 333). See also Doc. 52, PageID 383 (arguing that a "finding of guilt based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim."). Contrary to this argument, in *Maben* the Sixth Circuit squarely rejected the "checkmate" doctrine. *Id.*, 887 F.3d at 262. Thus, a disciplinary conviction, by itself, does not preclude Plaintiff from proving that his exercise of his protected First Amendment right was a motivating factor in the alleged retaliatory conduct.

To help prove his claim, Plaintiff has submitted a Declaration that states that during a recorded interview in which a lie detector (Computer Voice Stress Analyzer) was used, Investigator J.T. Hall asked Plaintiff if he said the words written in the Conduct Report. Plaintiff states that the CVSA test confirmed that no deception was indicated when he denied the conduct of which he stood accused. (Doc. 51, PageID 359). Plaintiff also has submitted the Institutional Use of Force Special Investigation Report dated September 15, 2021. (Doc. 51, Ex. C, PageID 364-375). A portion of that report corroborates Plaintiff's Declaration that his witness account was consistent with truthfulness, despite also concluding that Plaintiff would not have had a clear view of the force used on Kitchen:

> All inmate statements are consistent in their assertion that the incident was initiated by Officer Corns, and that Kitchen had not struck Corns nor Romine and that in fact it was one of the responding officers that had hit Romine. Additionally, they stated that Kitchen did not fight, nor resist Officer Corns, Romine or any responding officers. All four inmates were offered a Computer Voice Stress Analyzer test and all four did pass the test with results indicating truthfulness.
> * * *
> While evidence does indicate that Edge, Storey and Gossard believe their version of events to be true, photos of the MI gym and video of the area at

the time of the incident show that the angle from which they witnessed the incident would have precluded them from having a clear view of much of what occurred within the equipment room….

(*Id*., PageID 366-367).[10]

In short, a reasonable jury could conclude that Defendant Kinner was motivated to falsely charge Plaintiff with disciplinary infractions in retaliation for the witness account/grievance that Plaintiff stated he would submit. (*See also* Doc. 13 at PageID 80). Therefore, a genuine issue of material fact remains on whether the Conduct Report and subsequent RIB conviction was to punish Plaintiff for actual misconduct, or in retaliation for his exercise of his First Amendment rights to report misconduct by correctional officers against another inmate. Because a reasonable jury could infer that the record presented to date supports Plaintiff's First Amendment retaliation claims, Defendants are not entitled to summary judgment.

### 3. Defendants' Newly Presented Arguments

Defendants add two new arguments to their reply memorandum that were not included in their summary judgment motion. First, Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his available state remedies before bringing this action. Defendants admit that Plaintiff "appears to have followed the three-step general grievance procedure" prior to filing a complaint in this Court. (Doc. 52, PageID 385). However, Defendants contend that Plaintiff "used the wrong grievance procedure" and "should have followed the procedures governing the Rules Infraction Board ("RIB") in place of filing an informal grievance." (*Id*.) Second, Defendants assert in

---

[10]The institutional report states that a criminal investigation by the Ohio State Highway Patrol concerning the incident was "still open" at the time of the report. (*Id*., PageID 364).

a single sentence (without argument or citation) that "they are immune from suit [under] Qualified and Eleventh Amendment Immunity." (*Id.*)

The undersigned declines to consider either of these new arguments mainly because they are procedurally improper and leave Plaintiff no opportunity to respond. In addition, Defendants' assertion of "immunity" is so conclusory and perfunctory as to be unworthy of discussion. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (issues raised in perfunctory manner are deemed waived). Defendants' suggestion that Plaintiff was wrong to exhaust his retaliation claim through the grievance process and instead should have appealed his disciplinary conviction in order to fully exhaust is contrary to the limitations of *Heck*, as discussed, and to the underlying premise of *Maben*.

### B. Plaintiff's Motion for Summary Judgment

On May 30, 2023, Plaintiff filed a cross-motion for summary judgment. Plaintiff supports his motion with a sworn Declaration, as well as with a copy of an Appeal to the Chief Inspector dated March 10, 2021. (Doc. 53-1). Plaintiff's Declaration and motion refer to multiple exhibits and pages of exhibits that are described in detail but that do not appear to be attached to his motion, other than the first page of exhibit E. (*See*, *e.g.*, Doc. 53, PageID 389, 391, 393; *but see* exhibits attached to Doc. 51, PageID 363-379). Still, Plaintiff has included with his motion the Declaration of Inmate Kitchen, as well as a "Statement of Undisputed Facts." (*See* Doc. 53, PageID 396-397; *id.*, PageID 398-399).

The undersigned concludes that Plaintiff is not entitled to summary judgment on his retaliation claims. Plaintiff points to evidence that after he witnessed the use-of-force incident and before his RIB hearing on March 1, 2021, he had written several informal complaints and grievances about what he witnessed and proclaiming his innocence. (*Id.*,

PageID 408). But Plaintiff's witness account does not automatically render him innocent of the charges in the Conduct Report, nor does it automatically prove a retaliatory animus was a substantial reason for his disciplinary conviction. In other words, a reasonable jury could conclude: (1) that Plaintiff was a reliable witness to the Kitchen incident; (2) that Plaintiff was also guilty as charged; and (3) that Plaintiff's oral and written grievances were not a substantial or motivating factor in Defendants' decisions to charge and convict him.

The undersigned is also unpersuaded that Plaintiff should be awarded summary judgment against Defendant Erdos even though he "did not commit the retaliation …violations, [because] he became responsible for them when he failed to correct them in the course of his supervisory responsibilities, and affirmed the plaintiff's disciplinary conviction." (Doc. 53, PageID 409). Plaintiff's suggestion that Erdos "did not commit" any retaliatory acts but should be held liable based on his supervisory duties endorses the classic theory of "respondeat superior."[11] But supervisory liability does not apply to government officials. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937 (2009).

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.,1984).

---

[11]Although Plaintiff's suggestion that Erdos did not commit retaliation could support summary judgment in Defendant's favor, Defendant Erdos has not advocated for judgment on that basis. And the undersigned declines to make such a recommendation sua sponte based on the record presented.

Plaintiff claims that Defendant Erdos is liable under the First Amendment[12] for his refusal to overturn Plaintiff's disciplinary conviction and to restore his security level status. (Doc. 53, PageID 411). At this point, Defendants do not dispute that Erdos was personally involved in that decision.[13] While a warden's supervisory duties are insufficient to impose liability, Plaintiff's sworn allegations in his complaint that Defendant Erdos personally participated in the decision to increase his security classification could provide a basis for liability if a jury believes that reclassification was a retaliatory act. (*See* Doc. 15, PageID 89, alleging that "Erdos approved of my 4B placement"; *Id.*, PageID 92-93, alleging that Erdos is liable for "upholding and agreeing to plaintiff['s] security level to be raised to a 4B, when evidence clearly shows the plaintiff was innocent.").

Finally, Plaintiff seeks the entry of judgment in his favor on a claim that Defendant Barney "violated the Plaintiff's Fourteenth Amendment [rights] by denying the Plaintiff Due Process." (Doc. 53, PageID 407). Because this Court previously dismissed all due process claims on initial screening, Plaintiff is not entitled to summary judgment on those dismissed claims.

## IV.    Conclusion and Recommendations.

For the reasons discussed, **IT IS RECOMMENDED THAT:**

1.  Defendants' motion for summary judgment (Doc. 48) should be DENIED;

2.  Plaintiff's motion for summary judgment (Doc. 53) should be DENIED.

---

[12]Plaintiff further argues that Defendant Erdos must have been aware of alleged "due process" violations based on Plaintiff's appeal of his conviction and lack of evidence to support it, Plaintiff's multiple reports about the use-of-force on Inmate Kitchen, and the cursory reason identified by Defendant Barney for his disbelief of Plaintiff's account. ("Not convincing.") (Doc. 53, PageID 409-410). As authority, Plaintiff cites to several cases that involve due process claims. But those cases are distinguishable because the only remaining claims in this case are retaliation claims under the First Amendment.

[13]That said, the evidence before the Court suggests that the Warden's Assistant, non-party Larry Greene, was the individual responsible for reviewing the RIB panel decision on appeal. (Doc. 50-4).

3. If this Report and Recommendation is adopted, the Court should hold a status conference to set final pretrial and trial dates.

                                                   *s/Stephanie K. Bowman*
                                                  Stephanie K. Bowman
                                                  United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LE'SEAN EDGE,                                          Case No. 1:21-cv-532

     Plaintiff,

          v.                                          Hopkins, J.
                                                      Bowman, M.J.

RON ERDOS, et al.,

     Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party must respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).