UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **LE'SEAN EDGE**, | |
| *Plaintiff*, | Case No. 1:21-cv-532 |
| v. | Judge Jeffery P. Hopkins |
| **RON ERDOS**, *et al.*, | Magistrate Judge Stephanie K. Bowman |
| *Defendants*. | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on the Report and Recommendation ("R&R") issued by Magistrate Judge Stephanie K. Bowman on September 22, 2023 (Doc. 57), which recommends that this Court deny cross summary judgment motions filed by Defendants[1] (Doc. 48) and Plaintiff, Le'Sean Edge (hereinafter referred to as "Plaintiff") (Doc. 53). Plaintiff filed the Complaint in this case alleging that Defendants violated his civil rights by infringing upon his First and Eighth Amendment rights, in addition to violating other state law protections. Only Plaintiff's First Amendment retaliation claims against Defendants Erdos, Barney, and Kinner remain. He now asks this Court to grant his motion awarding monetary damages based on the uncontroverted facts alleged in the Complaint. To the contrary, Defendants contend that, even if the facts alleged in the Complaint are viewed as true, Plaintiff's claims are without merit and that they are entitled to summary judgment. Following the issuance of the R&R, Defendants filed an Objection to it (Doc. 59), however,

---

[1] At this stage in the proceedings, only three Defendants remain. The term "Defendants" refers collectively to those parties—Defendants Ronald Erdos, Brian Barney, and Josh Kinner.

Plaintiff did not file a response. As discussed below, after conducting a de novo review pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), this Court **OVERRULES** the Objection (Doc. 59), **ADOPTS** the R&R (Doc. 57), and **DENIES** Defendants' Motion for Summary Judgment (Doc. 48) and Plaintiff's Motion for Summary Judgment (Doc. 53).

I.  BACKGROUND

Plaintiff, a former inmate at the Southern Ohio Correctional Institution ("SOCI"), seeks to recover monetary damages against Defendants for allegedly violating his First Amendment rights. Plaintiff asserts that, on February 13, 2021, he witnessed an incident involving excessive use-of-force by several correctional officers against another inmate—Inmate Kitchen—at SOCI. Plaintiff's verified Complaint[2] asserts that he witnessed correctional officers at SOCI brutally beat inmate Kitchen, purportedly without provocation, because the officers believed Kitchen was a child molester, and that Plaintiff later threatened to report the officers. Doc. 50, PageID 327 (citing Doc. 13, PageID 74–75); *see also* Doc. 53, PageID 403. Stemming from the February 13 incident, Kitchen suffered serious physical injuries and had to be transported to an offsite hospital for medical care. Doc. 51, PageID 364.

Defendant Kinner was one of the officers at the scene. Doc. 51, PageID 372. He purportedly was standing near bleachers in the gymnasium where Plaintiff and other inmates were seated. Doc. 48-5, PageID 316. Plaintiff claims to have had a view into the recreation equipment room where the incident was occurring. *Id.* at PageID 319. Plaintiff further states

---

[2] A verified complaint equals a declaration made under penalty of perjury as to any facts asserted based on personal knowledge that would be admissible in evidence, but not as to legal conclusions to be drawn from those facts. *Healthy Advice Networks, LLC v. Contextmedia, Inc.*, No 1:12-cv-610-SJD, 2014 WL 5588444, at *4 (S.D. Ohio Nov. 3, 2014).

2

that during the fracas he witnessed one officer punch another officer to try to make it look as though Kitchen had assaulted the officer, thereby justifying the beating. Doc. 13, PageID 74–75; Doc. 48-5, PageID 319. According to Plaintiff, after witnessing this incident he and other inmates at the scene were directed to return to their cells. Doc. 13, PageID 75. On his way back to his cell, Plaintiff orally announced to prison officials his intentions to write a grievance about the alleged unlawful use of force that he had just witnessed. Doc. 53, PageID 404; Doc. 51, PageID 379.

According to Plaintiff, hours later, between 3:00 and 5:00, a.m., on February 14, 2021, correction officers woke him and escorted him into the restrictive housing unit. Doc. 53, PageID 404; Doc. 51, PageID 379. When Plaintiff asked why he was being moved and whether it had anything to do with the use-of-force incident, he was told only "because the captain said so." Doc. 13, PageID 75. Three days later, on February 17, Plaintiff was presented with a copy of a Conduct Report written by Kinner that charged Plaintiff with violations of Rule 08 (threatening bodily harm to another), Rule 18 (encouraging or creating a disturbance) and Rule 21 (disobedience of a direct order) for his alleged conduct on February 13, 2021. Doc. 50-4, Greene Declaration ¶ 7, PageID 347. The Conduct Report states as follows:

> I C/O Kinner responded to a man down alarm/staff assault in the M1 Gym. Quickly after my arrival I became concerned for the safety of responding officers due to multiple inmates standing in the bleachers near the equipment room where staff was assaulted. These inmates were shouting obscenities towards responding officers and ignored my direct orders for them to be seated. They were encouraging the inmate who had assaulted staff to continue to harm officers "because that's what they deserve". They were also talking amongst each other about joining in on the assault, I overheard and identified inmate Edge 671-334 saying "yall step off the ledge I'm with you, show these bitches what these hands can do". Inmate Edge was referring to

3

>the concrete ledge of the bleachers and assaulting staff. His comments were echoed by multiple other inmates near him, eventually he stopped creating a disturbance when Zone Lieutenants arrived.

Doc. 50-5, PageID 348. Plaintiff contends that another witness, Inmate Storey, was also charged with the same conduct report. Doc. 53, PageID 404.

In response to the adverse Conduct Report, Plaintiff wrote to the Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), Annette Chambers-Smith, to describe what he had witnessed on February 13 and to proclaim his innocence related to the alleged false charges. Doc. 51, PageID 366. He submitted Informal Complaint Resolutions ("ICRs") to the Institutional Director, an institutional investigator, and the Deputy Warden of Operations. Doc. 13, PageID 76; Doc. 51, PageID 379.

On March 1, 2021, Plaintiff appeared before the Rules Infraction Board ("RIB"), which included Defendant Barney. At that proceeding, Plaintiff stated in his defense:

>THIS IS A PLOY TO TAKE THE LIGHT OFF OF WHAT THEY DID. WE CAME DOWN TO REC AND I WAS IN THE BLEACHERS. I SAW INMATE KITCHEN AND THEY PUSHED HIM INTO THE EQUIPMENT ROOM AND WE HEARD A WHOLE BUNCH OF RUMBLING, THE DUDE WAS SCREAMING THAT HE DIDN'T DO NOTHING. ONE C/O PUNCHED ANOTHER ONE IN THE FACE. PEOPLE WERE SAYING LITTLE SHIT BUT I DIDN'T SAY NOTHING. I WENT BACK TO THE BLOCK AND ABOUT 3:00 IN THE MORNING THEY CAME AND GOT ME.

Doc. 50-5, PageID 349. During the RIB hearing, Plaintiff called Inmate Storey as a witness to corroborate his account of what he had observed. *Id.* at PageID 352. Plaintiff also questioned Defendant Kinner and requested a review by the RIB of the security footage of the incident. However, Defendant Barney refused to play the footage for Plaintiff, stating that he had already viewed it and that the video was too blurry to identify any of the individuals.

4

Doc. 13, PageID 76–77; Doc. 53, PageID 398. When it was Kinner's turn, he testified that he could identify Plaintiff in the video because he recognized Plaintiff's voice over the other inmates shouting. Doc. 50-5, PageID 353. After hearing from all three witnesses, the RIB determined that Plaintiff's denial of the charges was "[n]ot convincing." *Id.* at PageID 354. The RIB's findings reiterate those contained in Kinner's Conduct Report. *Id.*

As punishment for his involvement, Plaintiff contends that he spent 25 days in restrictive housing and was later recommended for a review of his security level. *See* Doc. 50-5, PageID 354. Plaintiff's disciplinary conviction was affirmed, and on March 2, 2021, his security level was increased from 4AT to a 4B classification. Doc. 50-5, PageID 355. Plaintiff remained in restrictive housing through July 7, 2021. Doc. 13, PageID 77, 79.

Thereafter, Plaintiff was interviewed several times both by institutional employees and by state police concerning the February 13 use-of-force incident. On April 14, 2021, Plaintiff submitted to a lie detector test. Doc. 51, PageID 367. Plaintiff was asked questions about the incident, including whether he witnessed Kitchen being attacked and whether he made the comments alleged in the Conduct Report. *Id.* According to Plaintiff, he passed the lie detector test and the inspector running the test reportedly told him he had seen RIB convictions overturned on that basis but he "can't make any promises." Doc. 13, PageID 78; Doc. 51, PageID 367. On May 3, 2021, Plaintiff was interviewed by the Assistant of the Chief Inspector, Kelly Riehle. Plaintiff again reported his observations and Riehle acknowledged that Plaintiff had passed the lie detector test. *Id.* at PageID 78–79. However, she did not answer whether his 4AT security status would be restored. *Id.* at PageID 79.

This matter is now before the Court on cross-motions for summary judgment on Plaintiff's First Amendment retaliation claims against Defendants Erdos, Barney, and

Kinner—the only claims that remain. The Magistrate Judge recommended both motions be denied. Doc. 57. On October 13, 2023, Defendants filed their Objection to the Magistrate Judge's R&R. Doc. 59. Plaintiff did not respond or file any of his own objections.

II. **LAW AND ANALYSIS**

Objections to a report and recommendation are reviewed de novo. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate [judge]'s report that the district court must specially consider." *Id.* (quotation marks and citation omitted). "[A] general objection to the entirety of a magistrate's report, without specifying a single issue of contention, fails to satisfy" this specificity requirement. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

In the R&R, the Magistrate Judge found, *inter alia*, that a reasonable jury could include that Plaintiff's oral complaint made immediately after the February 13 incident, and written statements made before and after that incident, may constitute protected conduct under the First Amendment.[3] Doc. 57, PageID 438. Defendants concede that both oral threats to file

---

[3] The Sixth Circuit has held that to succeed on a First Amendment retaliation claim, a plaintiff must prove three elements:
> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

grievances and written complaints are protected conduct. Doc. 59, PageID 460. However, Defendants argue that prior to filing their Motion for Summary Judgment they were not on notice that Plaintiff's claims were, in part, based on his oral complaint to file a grievance. *Id.* Defendants state that they are entitled to summary judgment as a matter of law because of this misunderstanding. *Id.* at PageID 462. The Court disagrees with Defendants.

A. **Defendants' Objection.**

Defendants' Objection to the R&R states that the Magistrate Judge incorrectly concluded that "Defendant Kinner was motivated to falsely charge Plaintiff with disciplinary infractions in retaliation for the witness/account that Plaintiff stated he would submit." *Id.* at PageID 458 (citing Doc. 57 PageID 442). Defendants assert that because Plaintiff's oral complaint, which occurred just after the attack on Kitchen, was not included in the Amended Complaint, it is a "new theory" proffered at the summary judgment stage that Defendants did not have an opportunity to conduct discovery on. *Id.* at PageID 460. In short, Defendants argue strenuously that they are entitled to summary judgment because they did not receive notice that Plaintiff's oral statement constituted protected conduct. Defendants' argument is misplaced for two reasons.

First, Defendants misconstrue the basis underlying the Magistrate Judge's finding of a dispute of material fact concerning whether the Defendants retaliated against Plaintiff for engaging in protected conduct under the First Amendment. Despite Defendants' assertions otherwise, the Magistrate Judge relied upon more than Plaintiff's oral statements in finding that a factual dispute exists. Indeed, the Magistrate Judge stated that:

> [A] reasonable jury could conclude that Plaintiff engaged in protected conduct through his ***verbal complaints*** immediately

---

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

7

>after the February 13 use-of-force incident (stating his intent to follow up with a written grievance) and through *written statements* made both *before* and *after* the issuance of the Conduct Report and conviction on those charges.

Doc. 57, PageID 438 (emphasis added). Defendants' Objection ignores the written statements issued by Plaintiff before and after the alleged retaliation that support the Magistrate Judge's finding. A reasonable jury could find that Defendants retaliated against Plaintiff because of the complaints—both written and verbal—that he made following his observations of the February 13 altercation between Kitchen and Defendants.

Second, Defendants' argument that Plaintiff is proceeding on a "new theory" is misguided. While not expressly referenced therein, Plaintiff's Amended Complaint does reference institutional records that describe his oral complaint. One such piece of evidence consists of an ICR which Plaintiff addressed to "Investigator" and submitted on February 14, 2021. In the ICR, Plaintiff describes his oral complaint, which occurred just after Kitchen was allegedly attacked by certain prison personnel, stating that "I told the [COs] that I was writing this [(i.e., an ICR concerning the attack of Kitchen)] up as soon as I got back to the block." Doc. 51, PageID 379. That same ICR is expressly referenced in Plaintiff's Amended Complaint:

>I also wrote a [sic] informal complaint to Ms. Mahlman (institutional director), **Mr. Miller (Investigator)**[,] and Ms. Davis (Deputy Warden of Operations) explaining to them what I explained to Annette Chambers-Smith. Besides Annette Chambers-Smith[,] they all responded back to me and said this matter is under investigation."

Doc. 13, PageID 76 (emphasis added). "In short, the ICR dated February 14 provides evidence of 'protected conduct' in the form of an oral complaint made to officers immediately after the attack on February 13, before Plaintiff was issued a Conduct Report." Doc. 57,

8

PageID 437. *See also Maben*, 887 F.3d at 265 (holding that the plaintiff's oral grievance constitutes protected activity under the First Amendment).

The Magistrate Judge also detailed and quoted what previously issued report and recommendations make clear: "this case is about Plaintiff's claim that all three Defendants 'retaliated against him for witnessing and writing grievances concerning the February 13, 2021 attack.'" Doc. 57, PageID 436 (quoting Doc. 16, PageID 102). Plaintiff's oral complaint occurred between when he "witness[ed]" the attack, and "wr[ote] grievances" concerning the same. In other words, the oral complaint occurred during the course of conduct that gives rise to Plaintiff's retaliation claims. Defendants' assertion that the oral complaint amounts to a "new theory" of protected conduct is therefore without merit. Defendants were clearly on notice of Plaintiff's oral complaint immediately after the February 13 incident occurred and, heretofore, they had ample opportunity to conduct discovery on that subject.

After conducting a de novo review of the entire record, the Court finds that the Magistrate Judge correctly analyzed Plaintiff's protected conduct under the First Amendment and her analysis is well reasoned and supported by the law and facts. The Court, therefore, **OVERRULES** Defendants' Objection and **ADOPTS** the R&R. Accordingly, both parties' Motions for Summary Judgment are **DENIED**.

  **B.**  **Appointment of Counsel for Pro Se Plaintiff.**

Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to employ counsel." However, "[a]ppointment of counsel in a civil case is not a constitutional right" but "a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th

Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985). As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Montgomery v. Miller*, No. 08-2710-STA-dkv, 2008 U.S. Dist. LEXIS 90558, 2008 WL 4853336, at *2 (W.D. Tenn. Nov. 6, 2008) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)).

  Here, the Court has found that Plaintiff has made a threshold showing of merit that is sufficient to survive summary judgment and proceed to trial. *See supra*, Section II.A. While Plaintiff has been able to conduct these proceedings on his own behalf until this point, the complexity going forward, including the need to capably present and cross-examine witnesses at trial and handle the documentary evidence, suggests that appointment of counsel might now be appropriate. Moreover, the Court acknowledges that Plaintiff has made two previous motions for the appointment of counsel (Docs. 21, 39), which the Court has denied. *See* Docs. 31, 42. When denying the second of those two motions, the Magistrate Judge forewarned that "[u]nless and until this case proceeds beyond dispositive motions and a trial date is scheduled by the presiding district judge, there is no basis for the appointment of counsel." Doc. 42, PageID 275. Since this case is now set to proceed beyond dispositive motions, the Court finds that appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is warranted.

  The Court notes, however, that "[w]hile Congress has authorized courts to appoint counsel in cases where *in forma pauperis* status has been granted, *see* 28 U.S.C. § 1915(e)(1), it

has never authorized any funding for such counsel, and the Court cannot compel counsel to serve without compensation." *United States v. Hunter*, No. 3:19-cr-182, 2021 U.S. Dist. LEXIS 25965, at *5 (S.D. Ohio Feb. 11, 2021) (citing *Mallard v. United States Dist. Court for Southern Dist.*, 490 U.S. 296, 308–09 (1989)); *Lavado*, 992 F.2d at 605–06. Thus, if pro bono counsel cannot be retained, Plaintiff may have to proceed pro se. *See e.g., Brown v. Gray*, No. 2:19-cv-2425, 2020 U.S. Dist. LEXIS 214063, at *2 (S.D. Ohio Nov. 16, 2020) ("§ 1915(e)(1) does not provide authority for appointment of counsel, but merely codifies the authority of a District Court to ask an attorney to represent a plaintiff.").

Based on the foregoing, the Court will, by separate order, set a status conference in this case. At that conference, the Court will address the appointment of counsel to represent Plaintiff in all remaining pre-trial and, if necessary, trial proceedings.

## III. CONCLUSION

This Court **OVERRULES** Defendants' Objection (Doc. 59), **ADOPTS** the R&R (Doc. 57), and **DENIES** the motions for summary judgment filed respectively by Defendants and Plaintiff (Docs. 48, 53). The parties will be directed by separate order of this Court to appear at a telephonic status conference to address the appointment of counsel to represent Plaintiff in all further proceedings.

The Court **DIRECTS** the Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: March 18, 2024

Hon. Jeffery P. Hopkins
United States District Judge

11